**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| 333 8th STREET NE L.L.C.<br>333 8th Street, NE<br>Washington, D.C. 20002<br><br>And<br><br>J. Michael Hannon<br>2721 Clyde Street<br>Matlacha, FL 33993<br><br>Plaintiffs<br><br>vs.<br><br>TURNKEY TITLE, LLC<br>1641 State Route 3, N<br>Suite 202<br>Crofton, MD 21114<br><br>Registered Agent:<br>V. Peter Markuski, Jr., Esq.<br>Goozman, Bernstein & Markuski<br>9101 Cherry Lane, Suite 207<br>Laurel, Maryland 20708<br><br>Defendant | : | Case No. 1:23cv00941-JEB |

## VERIFIED AMENDED COMPLAINT[1]

## INTRODUCTION

1. Plaintiffs, 333 8th Street NE L.L.C. ("333 8th Street") and J. Michael Hannon ("Hannon"), by and through their undersigned counsel, hereby submit this Complaint against Defendant, Turnkey Title, LLC ("Turnkey"), for Negligence, Breach of Fiduciary Duty, and

[1] The Complaint is amended as a matter of course pursuant to F.R.C.P. 15(a)(1)(B).

Violations of the D.C. Consumer Protection Procedures Act and/or Maryland Consumer Protection Act.

2. This action is a result of Turnkey's failure to employ commercially reasonable security procedures and failure to detect a blatantly fraudulent email initiating a wire fraud scam. Turnkey's negligence allowed funds to be directed to a fraudulent account, leaving Plaintiffs with losses in excess of $580,000.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

5. The Court has personal jurisdiction over Turnkey because Turnkey contracted to provide services in the District of Columbia.

**PARTIES**

6. Plaintiff 333 8th Street is a Limited Liability Company registered in the District of Columbia with a principal place of business located at 333 8th Street NE, Washington D.C., 20002.

7. Plaintiff Hannon is a resident of Florida, and the sole member of 333 8th Street NE L.L.C.

8. Defendant Turnkey Title, LLC, is a Maryland Limited Liability Company with its principal place of business located at 1641 State Route 3, N, Suite 202, Crofton MD 21114. Turnkey is a title company located in the State of Maryland, engaged in the real estate settlement/title business. Turnkey represented the buyer, John King, in this transaction and was responsible for wiring the proceeds from the real estate transaction to the seller's bank.

**FACTS**

9. Plaintiff Hannon purchased 333 8th Street, N.E., Washington, D.C. 20002, (the "Property") on July 17, 2015, using his personal funds and a mortgage loan. Plaintiff Hannon titled the property in a single asset entity named 333 8th Street, NE, LLC. The LLC is wholly owned by Plaintiff Hannon, and is treated as an alter-ego of Hannon for all purposes.

10. Because the LLC was a single asset entity, Plaintiff Hannon was required to sign a personal guarantee securing the mortgage loan, and to qualify for the mortgage loan based on his personal assets. During the lifetime of the mortgage loan, Plaintiff Hannon paid the mortgage loan from his personal assets.

11. Beginning in 2015, Plaintiff Hannon operated his law firm, HANNON LAW GROUP, LLP, from 333 8th Street, NE. Plaintiff Hannon was the 100% owner of HANNON LAW GROUP, LLP. In addition, Plaintiff Hannon resided in the apartment on the first floor of 333 8th Street, NE, whenever he was in the District of Columbia. Plaintiff Hannon also occasionally allowed members of his family to use the apartment.

12. Neither Plaintiff Hannon nor the LLC used 333 8th Street, NE, to trade or sell commercial products. At all times, Plaintiff Hannon and the LLC were consumers of services, such as the construction trades, service utilities, food services, and business services.

13. Plaintiff Hannon made all decisions regarding the maintenance and use of 333 8th Street, NE, as he anticipated appreciation in the value of the property over time. Plaintiff Hannon anticipated selling 333 8th Street, NE, to realize a personal profit which would assist him in retirement. Plaintiff Hannon never filed tax returns for the LLC, but rather reflected any gains or losses on personal tax returns.

14. In order to maintain and to increase the value of the LLC, Plaintiff Hannon expended over $250,000 from his personal funds in the improvement and maintenance of the property.

15. In 2022, Plaintiff Hannon decided to sell the Property. He executed all documents necessary for the listing, sale and settlement of the sale of the property. Plaintiff Hannon intended to receive the profit from the sale of the property into his personal account, and to use the funds towards his retirement plans. Thereafter, 333 8th Street, NE, LLC, would no longer own any assets or engage in any consumer activities. Since the LLC was an alter ego of Plaintiff Hannon, he was a consumer and beneficiary of the services of Defendant.

16. The buyer, John King, agreed to purchase the Property from seller, Plaintiffs, for $1,150,000. The closing for this real estate transaction, took place on Thursday, October 27, 2022.

17. At all times relevant hereto, Defendant Turnkey acted through its employees and agents, including but not limited to Tammy Economes, Lisa Vinson, and Rachel Forame.

18. At all times relevant hereto, Catherine Arnaud-Charbonneau, real estate agent employed by Compass, represented Plaintiffs in the sale of the Property.

19. At all times relevant hereto, Morgane Barry and Inez Su were settlement agents acting on behalf of Legacy Settlement Services, a title company representing Plaintiffs in the sale of the Property.

20. As part of its obligations, Defendant was to disburse funds to the Plaintiffs in the amount of FIVE HUNDRED EIGHTY-FOUR THOUSAND, TWO HUNDRED NINTEY THREE DOLLARS AND SIXTY-TWO CENTS ($584,293.62) with respect to the sale of the Property.

21. On October 27, 2022, at approximately 9:00 a.m., Hannon signed the closing documents in Washington, D.C. with his real estate agent, Catherine Arnaud-Charbonneau, present. Arnaud-Charbonneau then physically transported the documents to Defendant Turnkey's office in Crofton, Maryland.

22. Subsequent to the signing referenced in Paragraph 15, Turnkey and Legacy Settlement Services corresponded via email to finalize the closing of the Property. A true and correct copy of Morgane Barry's email exchanges between October 27, 2022 and November 2, 2023, with Turnkey personnel are attached hereto as **Exhibit A**. Upon information and belief, the emails from October 28, 2022 at 8:23 a.m. to October 31, 2022 at 9:06 a.m. are emails after the fraudster(s) took over Turnkey's email account. **See Exhibit A, p. 10-17**.

23. On October 27, 2022, at approximately 12:43 p.m. (EST), Morgane Barry provided Turnkey with Plaintiffs' wiring instructions. **Exhibit A, p. 17**. The Plaintiffs' wiring instructions were to a Morgan Stanley bank account. A true and correct copy of the wiring instructions sent by Morgane Barry is attached hereto as **Exhibit B**. This document was attached to the 12:43 p.m. (EST) email. At this point, the fraudster(s) took control of Turnkey's email account and initiated a fraudulent dialogue between Turnkey employees and Morgane Barry.

24. On October 27, 2022, at 4:43 p.m. (EST), Capital Bank confirmed in an email to Turnkey employee, Lisa Vinson, that at 3:41 p.m. (CT) (4:41 p.m. EST), it wired the funds in question to Wells Fargo Bank "ABA" *****0248 and "Account number" *****2880. This is not the same ABA and Account number listed in the wiring instructions Morgane Barry sent in the email referenced in Paragraph 17. Defendant did not confirm these details with Plaintiffs or their agents before sending funds via wire. A true and correct copy of the outgoing wire confirmation to the Wells Fargo Account from Capital Bank is attached hereto as **Exhibit C**.

25. On Wednesday, November 2, 2022, at 9:35 a.m. (EST), Hannon communicated with a member of Morgan Stanley and learned for the first time that the proceeds had not been wired to it by Turnkey.

26. On November 2, 2022, at approximately 9:43 a.m. (EST), Lisa Vinson emailed Morgane Barry, "Please see attached. [The wire] was sen[t] out on 10/27 at 4:43 p.m.". **Exhibit A, p. 2-3**. This is the first time Turnkey communicated to Plaintiffs that the funds had been wired on Thursday, October 27, 2022, to the wrong account. **Exhibit C** was attached to this email.

27. Defendant's email account was manipulated by a third-party fraudster in two ways. First, the fraudster(s) sent fraudulent emails from Turnkey's account indicating there was a delay in the transfer of funds. Second, the fraudster(s) used a fake email from Morgane Barry to provide false wiring instructions for a Wells Fargo account.

**INDICIA OF FRAUD**

28. The third-party fraudster(s) posed as Morgane Barry, with an email address of morgane_legacyfortitle@exfec.com. This email address was not the correct email address for Morgane Barry. The correct email address, which was known to Defendant Turnkey, was morgane@legacyfortitle.com. See **Exhibit D**. The fraudster(s) also sent emails from Turnkey's account indicating a delay in disbursement of funds. **Exhibit A, p. 10-17**.

29. In addition to the third-party fraudster(s) using an obviously fraudulent email address for Morgane Barry, the following should have been evident to Defendant Turnkey in the exercise of reasonable care:

a. The fraudulent emails were sent from a different time zone. This was apparent by the time stamps of the emails to Tammy Economes. For example, the time of the email with the fraudulent wiring instruction displays as "October 28, 2022 at **2:24**

**a.m.** [emphasis added]", but this email was received by Tammy Economes prior to October 27, 2022, at **4:41 p.m.** [emphasis added], when the wire was sent. **Exhibits C and D, p. 1**.

b. The fraudulent emails presented as a reply message from Morgane Barry did not include Arnaud-Charbonneau or Inez Su, who were included on prior emails. Dropping trusted sources off the email chain should have alerted Turnkey to an attempted scam. **Exhibit D**.

c. The fraudulent emails did not include Morgane Barry's cell phone listed in her signature block. In copying Morgane Barry's email profile, the third party-imposter removed Morgane Barry's cell phone from the signature block entirely. **Exhibit D**.

d. When Tammy Economes requested Plaintiffs to change the wiring instructions "for the company and not the member", the fraudster(s) provided in response wire instructions to a Wells Fargo LLC account, but with the exact same "ABA" number and "Bank account number" as the Wells Fargo individual account previously provided by the fraudster(s). Additionally, the fraudulent wiring instructions were for a Morgan Stanley account. A true and correct copy of the two fraudulent wiring instructions is attached hereto as **Exhibit E**.

e. The fraudulent emails did not include the following language that was previously included below Morgane Barry's signature,

> <u>FRAUD ALERT</u>! We will NEVER change our wire instructions via email. Do NOT send funds by wire if you receive an email requesting a change. Always verify our instructions by telephone if you have any doubts.

**Exhibit D**.

30. Turnkey later submitted an IC3 Complaint Referral Form to the federal law enforcement authorities, stating:

> We conducted a settlement on the sale of a property in DC on 10/27/22. At 9:39 am the seller's title company, Legacy Settlement Services, emailed our processor stating that they would be sending the seller's bank information shortly. At 11:45 am we received the wiring instructions from them, after reviewing them we stated that we could not use these instructions because it was in the name of the individual person and not the LLC the property was titled to. A while later we received new wiring instructions in the name of the LLC. Shortly after the seller called to confirm we received the new wiring instructions and we verified them on the phone. On the evening of 11/02/22 the seller's title company reached out to us because the seller had not received his funds. We forwarded the wire confirmation and they stated that this was not the wire instructions they provided. After further investigation the wire instructions we received was an email from a fake but, close email address to the seller's title company.

A true and correct copy of the IC3 Complaint Referral Form is attached hereto as **Exhibit F**. The fraudulent email has a time stamp as 11:45 p.m. not 11:45 a.m. as reflected above in the IC3. **Exhibit D, p. 4**.

31. Within a few days after Turnkey executed the wire transfer to the fraudulent account, the funds were wired out of the Wells Fargo account to another unknown account and have never been recovered.

**COUNT I**
**PLAINTIFFS' CLAIM FOR NEGLIGENCE AGAINST DEFENDANT TURNKEY**

32. Plaintiffs reincorporate paragraphs 1-31 of this Complaint as though more fully set forth herein.

33. Defendant Turnkey owed a duty of reasonable care to Plaintiffs with respect to the handling of settlement proceeds as settlement agents for the sale of the Property.

34. Turnkey and its employees and agents breached their duty of care to act as settlement agents by not enacting adequate security protocols and safeguards.

35. Turnkey's negligence is evidenced by, but not limited to, the failure to:

a. Employ commercially reasonable security procedures designed to determine fraudulent attempts to divert wire transfers;
b. Use an email account that requires additional forms of authentication;
c. Use digital signatures or encryption to communicate, secure documents, and authenticate the sender of messages;
d. Employ reasonable wiring procedures;
e. Take reasonable steps to review the fraudulent communications regarding wire transfers and to verify their authenticity;
f. Confirm the email address of the individual who sent fraudulent wire instructions;
g. Detect irregularities in the communication from the fraudster(s), such as grammatical errors or a different time zone;
h. Have more than one employee review the fraudulent communication;
i. Confirm the wiring instructions in a second, alternative mode of communication;
j. Carefully review and authenticate the fraudulent communication;
k. Use a secure internet account and secure passwords for sensitive documents;
l. Protect its own computer systems (including the Plaintiffs' personal information stored on Turnkey's computer systems) from unauthorized access or disclosure; and
m. Confirm wiring instructions by a phone call initiated by Turnkey to a known phone number of Plaintiffs.

36. Turnkey's breaches of the duties owed to Plaintiffs were the direct and proximate cause of' the Plaintiffs' losses, which exceed $584,293.62.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount in excess of $584,293.62, plus Pre-Judgment and Post Judgment interest, Attorney fees and costs and such other relief as this Court deems necessary and just.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**

37. Plaintiffs reincorporate paragraphs 1-36 of this Complaint as though more fully set forth herein.

38. Defendant owed a fiduciary duty to protect the Plaintiffs' financial information and assets and to distribute the funds from the real estate transaction. Defendant breached this duty by failing to adopt reasonable and necessary measures to safeguard their email accounts and computer system against intrusion by the fraudster (s).

39. The acts and/or omissions of Defendant permitted the fraudster(s) to gain access to Plaintiffs' personal and financial information. As a result of this access, the fraudster(s) were able to impersonate Legacy Settlement Services. Defendant's acts and/or omissions resulted in Defendant authorizing a wire to a bank account controlled by the fraudster(s). Defendant's actions and/or inactions were a gross violation of the standard of care for settlement agents responsible for the safekeeping of settlement funds relating to a real estate transaction.

40. Defendant's breach of their fiduciary duty to Plaintiffs was the direct and proximate cause of Plaintiffs' loss of $584,293.62. Defendant is liable to Plaintiffs in the amount of this loss, plus punitive damages, attorneys' fees, accrued interest, costs, and the expenses of this action.

WHEREFORE, Plaintiffs demand judgment in their favor an amount in excess of $584,293.62, plus Pre-Judgment and Post Judgment interest, Attorney fees and costs and such other relief as this Court deems necessary and just.

## COUNT III
## VIOLATIONS OF THE CONSUMER PROTECTION PROCEDURES ACT, D.C. CODE, §§ 28-3904 et seq.

41. Plaintiffs reincorporate paragraphs 1-40 of this Complaint as though more fully set forth herein.

42. Plaintiffs are a consumer within the meaning of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code, §28-3901(a)(2), as they are actual recipients of

consumer services. Defendant is a merchant within the meaning of the CPPA, D.C. Code, § 28-3901(a)(3), as it provided settlement services to Plaintiff.

43. Defendant's conduct in collecting and maintaining Plaintiffs' personal information was subject to the requirements of the CPPA, D.C. Code §28-3901, et seq. and the District of Columbia Security Breach Notification Act §28-3851, et seq. which require that a business implement and maintain reasonable safeguards to protect from unlawful use or disclosure any personal information collected or maintained by the business.

44. CPPA defines "personal information" as an individual's name in combination with, *inter alia*, an account number. *See* D.C. Code §28-38521(3)(A).

45. Plaintiffs allege that Turnkey's conduct as described above violated D.C. Code §28-3852(a), which provides that a business shall implement and maintain reasonable security safeguards and practices to protect personal information from unauthorized access, use, disclosure, or reasonably anticipated hazard or threat.

46. By violating D.C. Code 28-3852(a), Turnkey has violated the CPPA, D.C. Code §28-3904(kk).

47. Turnkey made false and misleading statements and/or representations to Plaintiffs regarding the security of Plaintiffs' personal information and or Turnkey's computer systems that had the capacity, tendency, or effect of misleading Plaintiffs in violation of the CPPA., D.C. Code, § 28-3094(e).

48. Turnkey misrepresented that its services possessed a characteristic or standard that they did not in fact have, in violation of the CPPA, D.C. Code, § 28-3904(a) and (d), by misrepresenting the security of its own computer systems and the risk of unauthorized use and

disclosure of the information stored on its computer systems. It also failed to follow its own fraud alert warnings. (¶23(e)).

49. Turnkey failed to state a material fact to the Plaintiffs, in violation of the CPPA, D.C. Code, §28-3904(e) and (f), by failing to inform the Plaintiffs regarding the risks associated with Turnkey's computer systems and the vulnerability of Turnkey's computer systems to unauthorized access, and by failing to inform them on October 27, 2022, that the wire transfer instructions were provided by a fraudulent source and the proceeds had been sent via wire on October 27, 2022.

50. Defendant made misleading representations regarding its customer service, in part, by stating that "Customer Service is the Key to Our Success!"

51. Defendant made misleading representations regarding its disclosure of nonpublic personal information, specifically stating that, "We do not disclose any nonpublic personal information about you with anyone for any purpose that is not specifically permitted by law."

52. Plaintiffs suffered damages in excess of $584,293.62 as a direct and/or proximate cause of Turnkey's unfair or deceptive trade practices, for which Plaintiffs are authorized to recover pursuant to the CPPA, D.C. Code, §28-3905(k)(2)(A)(i).

53. In addition to their actual damages, Plaintiffs are entitled to recover reasonable attorneys' fees and costs, punitive damages, and treble damages pursuant to the CPPA, D.C. Code, §28-3905(k)(2)(A)(i).

WHEREFORE, Plaintiffs demand judgment in their favor an amount in excess of $584,293.62, plus Pre-Judgment and Post Judgment interest, Punitive Damages, Treble Damages, Attorney fees and costs and such other relief as this Court deems necessary and just.

## COUNT IV

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT, MD. CODE ANN, COMMERCIAL LAW ART., §§ 13-301 et seq.

54. Plaintiffs reincorporate paragraphs 1-53 of this Complaint as though more fully set forth herein. This count is applicable if Maryland Law, not D.C. Law is deemed to apply.

55. Defendant engaged in unfair practices as defined by Md. Code, Comm. Law § 13-303 by seeking personal information from Plaintiffs, and by failing to provide adequate security measures to protect same while in its custody.

56. This practice is unfair as it caused Plaintiffs substantial injury in that fraudster(s) were able to access Plaintiffs' information to Plaintiffs' detriment.

57. Defendant is in violation of Md. Code, Comm. Law § 13-301 (1) due to the false and misleading representations made to Plaintiffs regarding the security of Plaintiffs' personal information and of Turnkey's computer systems that had the capacity, tendency or effect of misleading the Plaintiffs.

58. Defendant is in violation of Md. Code, Comm. Law § 13-301 (2) (i) and (iv) as Turnkey misrepresented that its services possessed a characteristic or standard that they did not in fact have. Plaintiffs made statements regarding security and nondisclosure of personal information stored on its computer which mislead Plaintiffs. It also failed to follow its own fraud alert warnings. (¶23(e)).

59. Turnkey failed to state a material fact to the Plaintiffs, in violation of the Md. Code, Comm. Law § 13-301 (3) by failing to inform the Plaintiffs regarding the risks associated with Turnkey's computer systems and the vulnerability of Turnkey's computer systems to unauthorized access, and by failing to inform them on October 27, 2022, that the wire transfer instructions were provided by a fraudulent source and the proceeds had been sent via wire on October 27, 2022

60. Defendant made misleading representations regarding its customer service, in part, by stating that "Customer Service is the Key to Our Success!"

61. Defendant made misleading representations regarding its disclosure of nonpublic personal information, specifically stating that, "We do not disclose any nonpublic personal information about you with anyone for any purpose that is not specifically permitted by law."

62. Plaintiffs suffered damages in excess of $584,293.62 as a direct and/or proximate cause of Turnkey's unfair or deceptive trade practices, for which Plaintiffs are authorized to recover pursuant to the Md. Code, Comm. Law § 13-408(b).

WHEREFORE, Plaintiffs demand judgment in their favor an amount in excess of $584,293.62, plus Pre-Judgment and Post Judgment interest, Punitive Damages, Attorney fees and costs and such other relief as this Court deems necessary and just.

VERIFICATION

I, J. Michael Hannon, am over the age of 18 and am competent to testify. I am the managing member and sole shareholder of 333 8th Street, NE, L.L.C. I have reviewed the allegations in this Verified Complaint and believe the facts stated herein to be true.

July 5, 2023
Date

s/J. Michael Hannon
J. Michael Hannon, Individually and on behalf of
333 8th Street, NE, LLC and 333 8th Street, NE

333 8TH STREET, NE, LLC and
J. MICHAEL HANNON
By Counsel

Paul J. Maloney, DC Bar No: 362533
Carr Maloney P.C.
2000 Pennsylvania Avenue, NW
Suite 8001
Washington, D.C. 20006
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile )
Paul.Maloney@carrmaloney.com

CERTFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing ***Amended Complaint*** was e-filed and served electronically, this 5th day of July, 2023, to:

Justin M. Flint, Esquire
Eccleston & Wolf, P.C.
1629 K Street, N.W.
Suite 260
Washington, D.C. 20006
flint@ewdc.com

Paul J. Maloney