UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

333 8th STREET NE, LLC,

    Plaintiff,

       v.

TURNKEY TITLE, LLC, *et al.*,

    Defendants.

Civil Action No. 23-941 (JEB)

## MEMORANDUM OPINION AND ORDER

A third-party discovery dispute has arisen against the backdrop of this negligence, breach-of-fiduciary-duty, and consumer-protection case brought by Plaintiff 333 8th Street NE, LLC. See ECF Nos. 12 (Am. Compl.), ¶ 1; 71 (Wells Fargo Opp. to Request for Bank Records); 72 (Pl. Brief Regarding Wells Fargo's Prod. of Docs.). Plaintiff alleges that Turnkey Title, LLC; Legacy Settlement Service, LLC; and Select Title and Escrow, LLC failed to "employ commercially reasonable security procedures and fail[ed] to detect a blatantly fraudulent email initiating a wire fraud scam." Am. Compl., ¶ 2. 333 8th Street has now subpoenaed documents from a third party, Wells Fargo, to understand how its bank software operated in this transaction that passed through its accounts. Wells Fargo claims that some of the documents Plaintiff requests fall under the Suspicious Activity Report (SAR) privilege, arising from the Bank Secrecy Act (BSA), and it thus asserts that it cannot legally produce them. Plaintiff asks the Court to find that this privilege does not cover the documents it is seeking. After reviewing the materials *in camera*, the Court holds that some of the documents must be produced but that the rest fall under the SAR privilege.

1

I.     **Legal Standard**

The BSA authorizes the Secretary of the Treasury to "require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1). Pursuant to that mandate, Treasury regulations require banks to file a SAR and preserve documents supporting the report, see 12 C.F.R. § 21.11; 31 C.F.R. § 1020.320, when a transaction involves an amount of at least $5,000 and "the bank knows, suspects, or has reason to suspect that . . . [t]he transaction involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities," 31 C.F.R. § 1020.320(a)(2), (a)(2)(i), or when the bank "detect[s] a known or suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the [BSA]." 12 C.F.R. § 21.11(a).

The BSA and accompanying regulations, however, prohibit banks from disclosing that they filed a SAR or any information that reveals a SAR exists. See 31 U.S.C. § 5318(g)(2)(A), (g)(2)(A)(i) ("If a financial institution . . . reports a suspicious transaction to a government agency . . . [no employee of the institution] may notify any person involved in the transaction that the transaction has been reported or otherwise reveal any information that would reveal that the transaction has been reported."); 31 C.F.R. § 1020.320(e)(1)(i) (stating that banks are prohibited from disclosing "a SAR or any information that would reveal the existence of a SAR"). The SAR privilege further extends to documents that reveal that a SAR does <u>not</u> exist. See 75 Fed. Reg. 75593, 75595 (Dec. 3, 2010); 75 Fed. Reg. 75576, 75579 (Dec. 3, 2010). The "logic driving both of these interpretations is that if a bank were able to disclose 'information when a SAR is not filed, institutions would implicitly reveal the existence of a SAR any time

they were unable to produce records because a SAR was filed.'" Zeitlin v. Bank of Am., N.A., 2021 WL 2595102, at *2 (D. Nev. June 24, 2021) (citation omitted).

**II.     Analysis**

Given this framework, the question here is which documents are covered by the SAR privilege. According to 333 8th Street, Wells Fargo must produce all documents that do not "reveal with effective certainty the existence of the SAR." Pl. Brief at 4 (quoting Zeitlin, 2021 WL 2595102, at *3) (cleaned up). Wells Fargo counters that all materials "necessary to conduct the evaluative process to determine whether to or not to file a SAR" are privileged. See Wells Fargo Opp. at 5. The Court must balance the risk of protecting too many documents — which could frustrate the purpose of discovery — with the risk of releasing sensitive documents — which could enable the detection of bank processes for discovering suspicious activity. In doing so, it sticks carefully to the regulations themselves, as other courts have done in striking this balance. More specifically, it adopts the rule that the SAR privilege protects materials that reveal the existence or nonexistence of a SAR. See 31 C.F.R. § 1020.320(e); see also In re Shefsky, 2024 WL 2836114, at *1 (D. Nev. June 4, 2024) ("Because each of the documents would reveal the existence or nonexistence of a SAR, the Court will not compel Wynn to disclose the documents."); Lesti v. Wells Fargo Bank NA, 2013 WL 12358007, at *3 (M.D. Fla. Sept. 30, 2013) (ordering Wells Fargo to disclose all materials that were not a SAR, a draft of a SAR, nor "reveal the existence of a SAR").

After conducting an *in camera* review using that standard, the Court finds that the following documents are discoverable because they relate to internal records created when a bank account is established and used, and do not reveal whether or not a SAR was filed: Wire Detail Page, Oct. 31, 2022 (IN_CAMERA000019-000021), Wire Detail Page, Oct. 27, 2022

3

(000043-000045), Banker Notes (000027), Internal Wells Fargo Spreadsheet (000028-000042), and Consumer Account Application (000046-000048).  The remaining documents fall within the SAR privilege and need not be produced.

### III.   Conclusion

For the foregoing reasons, the Court ORDERS that:

1. Plaintiff's request for documents is GRANTED IN PART and DENIED IN PART; and

2. Wells Fargo shall produce the aforementioned documents by August 5, 2024.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  August 1, 2024