UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

333 8TH STREET, NE, LLC,

    Plaintiff,

    v.

TURNKEY TITLE, LLC, *et al.*,

    Defendants.

Civil Action No. 23-941 (JEB)

**MEMORANDUM OPINION**

In 2022, Plaintiff 333 8th Street NE, LLC, attempted to sell its property to John King, who hired Defendant Turnkey Title, LLC, as his title company to help facilitate the sale. See 333 8th St., NE, LLC v. Turnkey Title, LLC, 2023 WL 5528028, at *1 (D.D.C. Aug. 28, 2023). During the closing, however, a fraudster disguised himself as a team member from Plaintiff's title company via a sham email address and induced Turnkey to wire money meant for 8th Street to the fraudster's account. See id. at *1–2. Plaintiff is now suing for a loss of over $580,000. See ECF No. 88 (Third Am. Compl.), ¶ 2.

The case has endured numerous twists and turns, including the addition of other Defendants, the filing of a Third-Party Complaint, and a whole series of motions. Up now is Turnkey's Motion to Dismiss three of the existing five counts against it. The Court will grant the Motion in part and deny it in part.

**I. Background**

The Court draws the facts from the Third Amended Complaint (and associated exhibits), as it must at this stage. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). J. Michael Hannon purchased 333 8th Street, Northeast on July 17, 2015, and titled it in a

1

wholly owned shell company called "333 8th Street, NE, L.L.C," Plaintiff in this matter. See Third Am. Compl., ¶ 11. In 2022, Hannon decided to sell the property to King for $1.15 million, id., ¶ 18, and he hired a title company, Legacy Settlement Services, LLC, to help with the settlement process. Id., ¶ 33. King meanwhile hired Turnkey to assist in wiring proceeds from the transaction to 8th Street's bank. Id., ¶ 21.

As the deal was closing, Morgane Barry, a Legacy settlement agent, notified Turnkey employee Tammy Economes via email that she would be "getting over the sellers['] banking information for a wire shortly." Id. at ECF p. 48. A fraudster intervened at this point, impersonating Barry, again via email, and sending Economes wiring instructions that purported to be for Hannon's account. Id. at ECF pp. 55–61. When Economes responded that she needed account information for 8th Street, the fraudster sent new instructions listing 8th Street as the account owner but providing the same fraudulent account numbers. Id. at ECF pp. 52–54. Turnkey, failing to catch the repeated numbers, disbursed the funds to that account. Id. at ECF p. 51.

After the money had been sent, the fraudster gained access to Economes's Turnkey email account and told Barry that "[t]here was a delay in disbursement." Id. at ECF p. 44. When the funds still had not arrived six days later, Barry requested a copy of the wire confirmation. Id. at ECF p. 31. Another Turnkey employee forwarded a confirmation showing that the funds had been disbursed to the wrong account, causing the parties to realize that they had been defrauded. Id., ¶¶ 39, 41.

Blaming Turnkey for its failure to recognize obvious fraud, Plaintiff commenced this lawsuit on April 6, 2023. See ECF No. 1 (Compl.). A Second Amended Complaint added as Defendants Legacy and Select Title and Escrow, LLC. See ECF No. 25 (Second Am. Compl.).

The current and operative Third Amended Complaint adds King's personal representative and alleges five counts against Turnkey: negligence (Count I); breach of fiduciary duty (Count II); violations of the District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3901 *et seq.* (Count III); violations of the Maryland Consumer Protection Act (MCPA), Md. Com. L. Code § 13-301 *et seq.* (Count IV); and conversion (Count V). See Third Am. Compl., ¶¶ 46–86. Turnkey now moves to dismiss Counts III, IV, and V only. See ECF No. 92 (Mot.).

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted). In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**III.    Analysis**

The Court addresses in turn each of the three claims at issue.

A.      Count III: CPPA Violation

The CPPA was enacted to protect consumers against a wide array of deceptive trade practices and grants an aggrieved consumer the right to bring an action for violations of its provisions. See D.C. Code § 28–3904; 28-3905(k)(1)(A). While it is a remedial statute and thus must "be construed and applied liberally to promote its purpose," id. § 3901(c), the CPPA is limited to consumer-merchant relationships. See Busby v. Cap. One, N.A., 772 F. Supp. 2d 268, 279 (D.D.C. 2011).

In moving to dismiss, Turnkey asserts that the parties lack such a relationship because it did not provide services to 8th Street. See Mot. at 4–5. More specifically, Turnkey was the agent for the buyer, not the seller, of the property. Plaintiff counters that the Court has already resolved this issue in its favor. See ECF No. 102 (Opp.) at 4–5. When the Court decided in its August 2023 Opinion that 8th Street had pled facts sufficient to establish that it was a consumer under the CPPA, Plaintiff argues, it inherently found that Turnkey was a merchant. See id. (citing 333 8th Street, 2023 WL 5528028, at *6–7). Supporting this assertion, 8th Street cites Simon v. Hofgard, 172 F. Supp. 3d 308 (D.D.C. 2016), which stated that a settlement and escrow company could conceivably be a merchant. See id. at 5. Turnkey responds that in that earlier Opinion, the Court merely found that Plaintiff could be considered a consumer, but never analyzed whether Defendant was a merchant, let alone a merchant in a consumer-merchant relationship with 8th Street. See ECF No. 103 (Reply) at 2–3. Resisting the applicability of Simon, Turnkey contends that the present case differs substantially because that plaintiff had paid the defendants for services. See id. at 2.

4

The Court agrees with Turnkey. In its prior Opinion, it assumed only that Plaintiff could reasonably be conceived of as a consumer, which has no bearing on whether Defendant was a merchant. See 333 8th Street, 2023 WL 5528028, at *6–7. Even if Turnkey were a merchant, moreover, it provided services only to the buyer, not to Plaintiff. See Third Am. Compl., ¶ 21; see also Ali v. Tolbert, 636 F.3d 622, 627–29 (D.C. Cir. 2011) (holding that individual who facilitated property transaction was not "merchant" under CPPA because there was "no evidence that he supplied, or held himself out as a person who would supply, any goods or services to [the purchaser] in connection with her ownership or sale of the house"). Indeed, 8th Street points out that it hired Legacy to act as its settlement agent, not Turnkey. See Third Am. Compl., ¶ 33. Since Defendant did not provide any services to 8th Street, a consumer-merchant relationship did not exist between the parties. Count III will thus be dismissed.

B.     Count IV: MCPA Violation

The Court next turns to the Maryland equivalent of the CPPA: the MCPA. That statute similarly protects Maryland consumers but exempts "insurance producer[s] licensed by the State." Md. Com. L. Code § 13-104(1). The parties dispute whether Turnkey's provision of settlement services qualifies. See Mot. at 5–6; Opp. at 6–7; Reply at 3–4. Ultimately, the Court need not resolve this question. To state an MCPA claim, a plaintiff must allege that a defendant engaged in "'(1) an unfair or deceptive practice . . . that is (2) relied upon, and (3) causes [the plaintiff] actual injury.'" Clark v. Bank of America, N.A., 561 F. Supp. 3d 542, 557 (D. Md. 2021) (quoting Ayres v. Ocwen Loan Servicing, LLC, 129 F. Supp. 3d 249, 270 (D. Md. 2015)). An unfair or deceptive practice is generally a misrepresentation or omission of a material fact. See Md. Com. L. Code § 13-301(1), (3), (9). 8th Street does not claim that Turnkey ever acted

5

in bad faith, let alone that it misrepresented or omitted any facts in the settlement process. The MCPA claim thus follows Count III out the door.

  C.  Count V: Conversion

As Plaintiff's claim of conversion rests on state substantive law, the Court must first determine which state's law should apply. In both D.C. and Maryland, however, conversion has essentially the same definition, making this a low-stakes decision. Compare Dennis v. Edwards, 831 A.2d 1006, 1013 (D.C. 2003) (conversion is "an unlawful exercise of ownership, dominion and control over the [personal property] of another in denial or repudiation of his right to such property"), with Donegal Assocs., LLC v. Christie-Scott, LLC, 248 Md. App. 448, 469 (2020) (conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it") (internal quotation marks omitted).

To make its determination, the Court will employ the choice-of-law rules of the District, which "blend a 'governmental interest analysis' with a 'most significant relationship' test." Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 842 (D.C. Cir. 2009) (using forum jurisdiction's choice-of-law rules when causes of action were "based solely on state substantive law"). Under the former, courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied[, which] typically leads to the application of the law of the plaintiff's domicile, as the state with the greatest interest in redressing injuries to its citizens." Bergbauer v. Mabus, 810 F. Supp. 2d 251, 257 (D.D.C. 2011) (citation omitted); see, e.g., Danziger v. Ford Motor Co., 402 F. Supp. 2d 236, 239–241 (D.D.C. 2005) (analyzing reason behind punitive-damages laws in Michigan and Maryland). The significant-relationship test, meanwhile, consists of the following

factors: "(1) place where the injury occurred; (2) place where the conduct causing the injury occurred; (3) domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) place where the relationship is centered." Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 34 n.10 (D.D.C. 2006).

While the District certainly has an interest in ensuring that 8th Street's injuries are remedied, the parties agree that Turnkey is domiciled in Maryland, the closing occurred in Maryland, and Turnkey wired the funds from Maryland. See Third Am. Compl., ¶¶ 7, 34; Mot. at 7 n.2; see also Alexander, 481 F. Supp. 2d at 34 n.10 (finding that under D.C.'s choice-of-law rules, Maryland law applied to tort claim when injury occurred in Maryland and the contract at issue was signed in Maryland). Further, although 8th Street is domiciled in the District, the parties appear to concur that Maryland law should resolve this issue. See Third Am. Compl., ¶ 6; Mot. at 7–8 (implicit agreement through arguing this issue based on Maryland law after stating that "[a]ccording to Plaintiff, the alleged conversion . . . occurred in Maryland"); Opp. at 7–8 (rebuttal based on Maryland law). The Court will follow their lead.

Under Maryland law, conversion is an intentional tort "consisting of two elements": "a physical act combined with a certain state of mind. The physical act can be summarized as any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Donegal Assocs., 248 Md. App. at 469 (cleaned up). Defendant asserts that it can be found liable for conversion only if it acted in bad faith, which 8th Street does not allege is the case. See Mot. at 8 ("At a minimum, a defendant liable of conversion must have an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.") (quoting Darcars Motors of Silver Spring, Inc. v. Borzym, 379 Md. 249, 262 (2004)). Plaintiff responds that Turnkey misunderstands the

7

standard. See Opp. at 7–8. The requisite intent, 8th Street contends — quoting the very next line of the case that Defendant quotes — can be found even if Turnkey "acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." Id. (quoting Borzym, 379 Md. at 262). Because Turnkey had the intent to disburse funds to a bank account, and therefore to exert control over the money, 8th Street asserts that it can be found liable.

On this point, Plaintiff prevails. Good intentions are an insufficient defense — as they so often are. See Henry G. Bohn, A Hand-book of Proverbs 514 (George Bell and Sons 1899) (1855) ("The road to hell is paved with good intentions."). Conversion may occur, for example, when an unknowing purchaser of stolen goods sells those goods. Borzym, 379 Md. at 263–64. Or when a person holds the property of another against that other person's protests based on a mistaken understanding of the ownership of that property, but with no actual malice. See K & K Mgmt. v. Lee, 316 Md. 137, 174–79 (1989). In short, exercising control over the property of another in a way that deprives her of her claimed rights to it will qualify as conversion, even if the defendant had no intention of acting inconsistently with the property owner's rights or did so by mistake. Here, Defendant's transfer of the funds ultimately deprived 8th Street of proceeds from the sale of its property, so Plaintiff has adequately pleaded its conversion claim. Count V will thus survive.

For the sake of this discussion, the Court assumed that the funds were the personal property of 8th Street when they were transferred, as Turnkey has not asserted otherwise. It is certainly arguable that at the time of transfer they did not yet belong to 8th Street, which would defeat a conversion claim. The Court will leave that question for another day.

## IV. Conclusion

For the foregoing reasons, Defendant Turnkey's Partial Motion to Dismiss will be granted in part and denied in part. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: December 19, 2024

9