UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 333 8TH STREET, NE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TURNKEY TITLE, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 23-941 (JEB) |

## MEMORANDUM OPINION

Here arrives the latest installment in this saga chronicling the fallout from a "seemingly straightforward real-estate transaction." 333 8th St. NE, LLC v. Turnkey Title, LLC, 2024 WL 4625638, at *1 (D.D.C. Oct. 30, 2024).  After Michael J. Hannon, sole owner of Plaintiff 8th Street NE, LLC, agreed to sell the eponymous D.C. property, an unknown fraudster impersonating his title company, Legacy Settlement Services, LLC, tricked the buyer's settlement agents into transferring the funds to the wrong bank account.  Plaintiff responded with this suit, which currently alleges that the various title companies — Defendants Turnkey Title, LLC; Select Title and Escrow, LLC; and Legacy — were at the helm during the transaction and are thus responsible for the loss.

Legacy, in turn, filed a Third-Party Complaint for contribution against Hannon's real-estate agent, Compass, Inc., alleging that, if Legacy is liable, then Compass is equally so for either breach of fiduciary duty or negligence.  Last October, the Court granted Compass's Motion to Dismiss in part, finding that the fiduciary-duty theory was inadequately pled, but it dismissed the Third-Party Complaint without prejudice and granted Legacy leave to amend if it

1

so chose. See id. Legacy shortly thereafter accepted the Court's invitation by filing an Amended Third-Party Complaint, which Compass again seeks to have thrown out. As before, the Court will deliver a split victory, granting judgment on only the fiduciary-duty claim, but retaining the professional-negligence cause of action.

I.  **Background**

As the background relevant to this Motion has been comprehensively covered in prior Opinions, see 333 8th St., NE, LLC v. Turnkey Title, LLC, 2023 WL 5528028, at *1–2 (D.D.C. Aug. 28, 2023); 333 8th St., 2024 WL 4625638, at *1–2, the Court provides only an abbreviated version below, relying on the facts that are not in dispute.

8th Street hired Compass, as the selling agent, and Legacy, as the title company, to facilitate the sale of its property. See 333 8th St., 2024 WL 4625638, at *1. The purchaser's title company was Turnkey. Id. During the closing on October 27, 2022, a fraudster, disguising himself as an employee of Legacy via a sham email address, caused Turnkey to wire money meant for 8th Street to the fraudster's account. Id. Compass was not a party to these emails. Id.

Compass and Legacy did, however, receive a separate email from the fraudster on October 28, this time purporting to be an employee of Turnkey, indicating that there had been a "delay" in transferring the funds to Plaintiff. Id.; see also ECF No. 117 (Am. Third Party Compl.), ¶ 15; ECF No. 99 (Third. Am. Compl.) at ECF p. 44. Compass immediately contacted Hannon to inform him that there had been "a delay in disbursement of closing funds." ECF No. 119-2 (October/November Email Thread) at ECF p. 2. It further assured him that "everything was received . . . , and you should receive the proceeds before today's business day closes." Id. It took no further action, however, and did not respond to the email chain with Legacy and the fraudster until November 1. See 333 8th St., 2024 WL 4625638, at *1. That delay "proved

critical" to consummating the fraud, "as an apparently unwitting accomplice of the fraudster's did not transfer the funds out of the original account until October 31, . . . four days after the illicit transfer." Id. (quoting ECF No. 61 (June 6 Mem. Op.) at 7).

Unable to recover those funds, 333 8th Street first sued Turnkey, see ECF Nos. 1 (Compl.), 12 (Am. Compl.), before adding claims against other Defendants, including Legacy (but not Compass). See Third Am. Compl. Legacy, in turn, filed a Third-Party Complaint for contribution against Compass, see ECF No. 78 (Third-Party Compl.), which the Court partially dismissed without prejudice while granting leave to amend. See 333 8th St., 2024 WL 4625638, at *1.

Legacy has now filed an Amended Third-Party Complaint, which lists two counts of contribution: one for professional negligence, see Am. Third-Party Compl., ¶¶ 30–39, and one for breach of fiduciary duty. See id., ¶¶ 40–50. Compass has likewise again filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, see ECF. No. 119-1 (MSJ), which Legacy opposes. See ECF No. 123 (Opp.).

**II.    Legal Standard**

Because Compass relies in part on facts outside the pleadings, the Court will construe its filing as a motion for summary judgment.

Summary judgment is appropriate where movant "is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Airlie Foundation v. IRS, 283 F. Supp. 2d 58, 61 (D.D.C. 2003); see also Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); CEI Wash. Bureau, Inc. v. DOJ, 469 F.3d 126, 129 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Liberty Lobby, 477 U.S. at 248; Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is

"genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Liberty Lobby, 477 U.S. at 248; see Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). The court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). To defeat summary judgment, however, an opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant is required to provide evidence that would permit a reasonable factfinder to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50 (citations omitted).

## III. Analysis

To assert a claim for contribution, Legacy must show that Compass is also liable to 333 8th Street for the claims that Plaintiff has brought against Legacy. See Jones v. Schramm, 436 F.2d 899, 901 (D.C. Cir. 1970) ("It is a prerequisite of contribution that the contribution

defendant must have been originally liable to plaintiff."). Here, as before, Legacy asserts that Compass is jointly and severally liable for Plaintiff's losses because it breached various fiduciary duties it owed 333 8th Street and was professionally negligent. See Am. Third-Party Compl., ¶¶ 30–50. The Court starts with the fiduciary-duty allegations before evaluating Legacy's professional-negligence claims.

    A.  Fiduciary Duty

To make out a breach of fiduciary duty, Legacy must show that Compass owed Plaintiff such a duty, that it violated this duty, and that its violation "proximately cause[d] injury." Guo Wengui v. Clark Hill, PLC, 440 F. Supp. 3d 30, 36 (D.D.C. 2020) (citation omitted). "D.C. statutory law prescribes the scope of the duties owed by real estate brokers." Coon v. Wood, 68 F. Supp. 3d 77, 86 (D.D.C. 2014) (citing D.C. Code § 42-1703); see also id. ("'The common law of agency relative to brokerage relationships in real estate transactions to the extent inconsistent with [§ 42-1703] shall be expressly abrogated.'") (quoting D.C. Code § 42-1703(n)). Legacy points to two such duties — namely, that Compass was obligated to "[p]romote the interests of the seller" by (1) "[d]isclosing to the seller material facts related to the property or concerning the transaction of which [Compass had] actual knowledge," D.C. Code § 42-1703(a)(1)(B)(iii), and (2) "[a]ccounting for in a timely manner all money and property received in which the seller [had] or may have [had] an interest." Id., § 42-1703(a)(1)(B)(iv).

Despite getting a chance to renovate its argument, however, Legacy still has not offered facts to demonstrate that Compass breached any fiduciary duties it owed Plaintiff. Start with subsection (iii), which requires the disclosure of "material facts" about the transaction of which Compass had "actual knowledge." Seemingly acknowledging that Compass did not actually know that the money had been fraudulently transferred, Legacy instead argues that Compass had

5

a duty to disclose any material fact of which it had "implied actual knowledge," a term sourced from caselaw governing statutes of limitations in tort actions. See Opp. at 12 (citing Pennwalt Corp. v. Nasios, 550 A.2d 1155, 1160 (Md. 1988), and Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1204 (D.C. 1984)); see also Pennwalt, 550 A.2d at 1160 (defining "implied actual knowledge" as "that knowledge that would in all probability have resulted from a reasonably diligent investigation pursued upon awareness of circumstances that would cause a reasonable person to investigate"). Even assuming that this standard is applicable in our context, however, Legacy fails either to plead or to establish that Compass in fact had implied actual knowledge of the fraud. Compare Am. Third-Party Compl., ¶¶ 40–50, and Opp. at 12, with Pennwalt, 550 A.2d at 1160. More problematic still, the very same section of the D.C. Code that establishes brokers' fiduciary duties appears to explicitly reject Legacy's construction. It instead instructs that "licensees shall be deemed to possess actual knowledge and information only," and that "[k]nowledge or information between or among clients and licensees shall not be imputed." D.C. Code § 42-1703(*l*)(3) (emphasis added). That dooms Legacy's subsection (iii) argument from the start.

       Legacy has, moreover, produced no evidence that Compass had actual knowledge of the fraud — unlikely, as Compass did not receive the email in which the wrong wiring instructions were sent. Nor has it demonstrated that Compass neglected to "[d]isclose . . . material facts" about the delay in transferring the funds in light of Compass's own, uncontroverted evidence that it immediately informed Plaintiff about the delay once it was made aware of it. See October/November Email Thread at ECF p. 2. The Court is thus persuaded that no reasonable factfinder could conclude that Compass breached this fiduciary duty to Plaintiff.

Legacy finds no refuge in subsection (iv) either. That subsection requires brokers to "[a]ccount[] for . . . all money and property received in which the seller has or may have an interest." D.C. Code § 42-1703(a)(1)(B)(iv) (emphasis added); see also id. § 47-2853.191(a)(1)(D) (laying out same duty). As Compass rightly points out, however, it never received the wired funds and therefore could not account for them. See MSJ at 10. Legacy retorts that subsection (iv) is ambiguous as to who must receive the funds to be accounted for and consequently should be read to require brokers "to account for all funds both received by any party and related to the transaction." Opp. at 13 (emphasis added) (also citing D.C. Code §§ 42-1703(g)(3), 47-2853.196(b)). But that interpretation reads too much into the statute's silence. On Legacy's construction, brokers would be micromanagers of the entire real-estate transaction, obligated to account for funds that they never received and that do not concern them — such as payments from the seller to his title company. It is not at all clear how brokers could "render a reckoning of" such funds, Account For, Black's Law Dictionary (12th ed. 2024), given that they lack any rights to them in the first place. The Court thus holds that Compass had no fiduciary duty to account for the settlement proceeds wired by Legacy to the fraudster's bank account, and summary judgment for Compass on this count is warranted.

    B.  Professional Negligence

The elements of negligence under D.C. law, which supplies the applicable standards, are well established: Legacy must show "(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty." Harris v. WMATA, 490 F. Supp. 3d 295, 308 (D.D.C. 2020) (quoting Powell v. Dist. of Columbia, 634 A.2d 403, 406 (D.C. 1993)). The D.C. Code also supplies the hook for the duty element of Legacy's professional-negligence count, as it requires brokers at all times to

"[e]xercise ordinary care." D.C. Code § 42-1703(a)(1)(D). While Legacy thus could have styled this claim as a separate breach of a fiduciary duty — and appears to do so in its Opposition, see Opp. at 10–11 — its Complaint instead chooses the essentially identical route of negligence. See Am. Third-Party Compl., ¶ 33; see also Org. of Chinese Ams., Inc. v. Damron, 2023 WL 2301977, at *6 (D.D.C. Mar. 1, 2023) ("[B]ecause the law governing these two causes of action is similar, they are properly analyzed together.").

No matter how the claim is framed, Legacy has done enough to survive summary judgment. To start, Compass does not contest Legacy's allegation that it had a duty to exercise "ordinary care," nor does it dispute that this duty required it "to use the skill, prudence, and diligence commonly employed by members of [its] profession." Am. Third-Party Compl., ¶ 34 (quoting Damron, 2023 WL 2301977, at *7). All it attacks is Legacy's assertion that Compass breached this duty by "failing to disclose material information to Plaintiff about the delay in transferring the Funds and failing to act for several days despite its knowledge of the delay in transferring the Funds." Id., ¶ 36; see MSJ at 7–8. While Compass has produced evidence that it informed 333 8th Street of the delay, it presents no evidence to controvert Legacy's allegation that Compass otherwise "fail[ed] to act," thus preventing Plaintiff from "learning of the fraud and clawing back the Funds from the fraudulent account." Am. Third-Party Compl., ¶¶ 36–37. For instance, it did not promptly contact the title companies about the disbursement delay or take any actions other than informing Plaintiff about the delay on October 28, see Opp. at 8–9, and its email to 333 8th Street falsely stated that there was no cause for concern. See October/November Email Thread at ECF p. 2. A reasonable factfinder could conclude that this behavior constituted professional negligence. The Court thus concludes that Legacy's allegations regarding Compass's failure to exercise due care may proceed.

## IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Compass's Motion.  A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  February 5, 2025